**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**CONSTANCE MOSS,**

        Plaintiff,

v.                                  Civil Action No. 3:17-cv-00312-JAG

**MANUFACTURERS AND TRADERS TRUST**
**COMPANY D/B/A M&T BANK**

**ALG TRUSTEE, LLC**

**ORLANS, PC**
Please Serve:
Corporation Service Company
Bank of America Center
1111 East Main Street, 16th Floor
Richmond, Virginia 23219
Registered Agent,

        Defendants.

**AMENDED COMPLAINT**

Now comes Constance Moss ("Moss"), by counsel, and sets forth to the Court the

following:

## I.      Preliminary Statement

1.     This is an action for actual and statutory damages, costs, and attorney's fees

pursuant to 12 U.S.C. § 2601 *et seq.* (Federal Real Estate Settlement Procedures Act –

"RESPA"); actual, statutory, and punitive damages, costs, and attorney's fees

pursuant to 15 U.S.C. § 1681 *et seq.* (Federal Fair Credit Reporting Act – "FCRA");

actual and statutory damages, costs, and attorney's fees pursuant to 15 U.S.C. 1692

*et seq.* (Federal Fair Debt Collection Practices Act – "FDCPA"); compensatory

damages for breach of contract; compensatory damages for breach of the implied

covenant of good faith and fair dealing; compensatory damages for breach of fiduciary duty; and declaratory judgment pursuant to 28 U.S.C. § 2201.

## II. Jurisdiction

2.  This Court has jurisdiction as to this case under the provisions of 12 U.S.C. § 2614, 15 U.S.C. § 1681(p), 15 U.S.C. § 1692k(d), 28 U.S.C. § 1331, and 28 U.S.C. § 1367(a).

## III. Parties

3.  Moss is a natural person who resides in her home (the "home") located at 1013 Willow Lawn Drive, Richmond, Virginia 23226, which is more particularly described as follows:

    Lot 12, Block "C," Section 1, on the Plan of Willow Lawn, made by W.W. LaPrade and Bros., Civil Engineers, dated May 23, 1950, and recorded in Plat Book 12, Page 64, reference to which is made for a more particular description of said property. Tax ID: W0200079026.

4.  Manufacturers and Traders Trust Company d/b/a M&T Bank ("M&T Bank") is a for-profit bank doing business in the Commonwealth of Virginia.

5.  ALG Trustee, LLC ("ALG Trustee") is a for-profit Virginia corporation.

6.  Orlans, PC ("Orlans") is a for-profit Michigan corporation and law firm, which is the successor-in-interest to Atlantic Law Group, LLC ("Atlantic Law Group"). Atlantic Law Group merged into Orlans, and Orlans has assumed all rights, duties, obligations, and liabilities of Atlantic Law Group through the merger. For reasons set forth below, ALG Trustee is the *alter ego* of Orlans. In some portions of this amended complaint, Moss will refer to Orlans, Atlantic Law Group, and ALG Trustee, collectively, as "Atlantic."

## IV.    Venue

7.    Venue is proper in this Court because the Defendants maintain registered offices within the boundaries of the Eastern District of Virginia; Moss resides in this District and Division; and a significant part of Moss' claims occurred in the City of Richmond, Virginia.

## V.    Facts

### *Applicable to All Counts*

8.    On August 27, 2007, Moss entered into a mortgage loan (the "loan"), in which she was the borrower and Superior Home Mortgage Corporation was the lender. The loan was evidenced by a note (the "note"), signed by Moss, which was secured by a deed of trust (the "deed of trust"), signed by her, recorded in the public land records of the clerk's office of this Court (the "public land records"), Virginia as Instrument Number 070031156. The deed of trust appointed Jackie Miller ("Miller") as trustee.

9.    A copy of the deed of trust accompanies this amended complaint as "Exhibit A."

10.    The deed of trust appointed Janice E. Garlitz, P.C. ("Garlitz") as trustee.

11.    Superior Home Mortgage Corporation assigned the note. M&T Bank has claimed rights as holder of the note and servicer of the loan.

12.    M&T Bank retained Bayview Loan Servicing, LLC ("Bayview Loan") to act as subservicer of the loan. At all times relevant to this case, Bayview Loan acted on its own and as agent for M&T Bank.

13.    Moss fell into arrears as to the note and was approximately two payments behind as of November 20, 2015.

14.    At all times relevant to this case, the value of the home has exceeded the amount owed on the loan by approximately $100,000.00.

15.    On October 2, 2015, the roof of the home was damaged by wind and rain.

16.    Moss timely notified her casualty insurer, The Hartford, of the damage.

17.    Moss began soliciting bids from contractors for repair of the roof damage.

18.    As a result of Moss' insurance claim, The Hartford issued a check (the "claim check") to Moss in the amount of $15,826.81 on October 26, 2015. A copy of the stub for the check accompanies this amended complaint as "Exhibit B." Due to a problem with her mail, Moss did not receive the claim check until early-December 2015.

19.    The note, at paragraph 6(C), provided, in pertinent part, as follows:

> (C) Notice of Default
> If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

20.    The deed of trust provided, in pertinent part, as follows:

> NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:
> 22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

21.    The deed of trust defined the borrower as Moss. Under the terms of the note and the deed of trust, the holder of the note could not accelerate the note or foreclose on the deed of trust unless the lender had first complied with the requirements of

paragraph 6(C) of the note and paragraph 22 of the deed of trust as recited herein above.

22.   By a letter dated November 20, 2015, M&T Bank purported to comply with the requirements of paragraph 6(C) of the note and paragraph 22 of the deed of trust, as recited herein above. A copy of that letter accompanies this amended complaint as "Exhibit C."[1]

23.   Exhibit C failed to comply with the requirements of paragraph 6(C) of the note and paragraph 22 of the deed of trust because:

A.   It overstated the amount of the arrearage on the loan by approximately $8,000.00, or more than 300%.

B.   It failed to "inform [Moss]…of the right to bring a court action to assert the non-existence of a default or any other defense of [Moss] to acceleration and sale." Ex. A at ¶ 22.

C.   It failed to provide Moss with adequate notice of "the action required to cure the default." *Id.*

24.   Rather than containing the language regarding court action required by the deed of trust, Exhibit C stated the following:

> In the event foreclosure proceedings are initiated, you have certain right(s), including the right to assert in the foreclosure proceedings the non-existence of a default, the right to argue that you did keep the promises and agreements under the Note and Mortgage/Deed of Trust, to raise any other applicable defense and to reinstate your loan account after acceleration and before sale.

25.   M&T Bank intentionally omitted the specific language required by the deed of trust to dissuade borrowers from bringing court actions prior to acceleration of the note

---

[1] When appropriate, the exhibits to this complaint contain redactions to remove Moss' sensitive account information.

or foreclosure. There is a substantive difference between the language required in the deed of trust and the language excerpted in paragraph twenty-four above. The language required by the deed of trust makes clear that the borrower may file suit to assert claims prior to acceleration and sale. The language set forth in Exhibit C omits any reference to defense against acceleration and contemplates legal action in the context of a judicial foreclosure proceeding, i.e. "assert in the foreclosure proceedings." In Virginia, the clear majority of foreclosure sales are conducted by lenders through a non-judicial action. The means to "assert [a right] in the foreclosure proceedings" in Virginia is to bring a court action against the lender and/or foreclosure trustee prior to the sale date, as described in the language set forth in paragraph twenty above.

26.    In *Mayo v. Wells Fargo Bank, N.A.*, No. 4:13-cv-163 (E.D. Va. 2014), this Court stated, in pertinent part, the following:

Fifth, Plaintiff alleges that one of the notices she received was substantively inadequate. Specifically, she contends that she "was not informed that she had a right to bring a cause of action to dispute the default or assert defenses to acceleration." Am. Compl. ¶ 57. She states that such notices were required by Section 22 of the Deed of Trust. Portions of that Section are illegible, but as best the Court can discern, the relevant part of that Section provides:

Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to any acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date [stated in] the

notice, Lender at its option may require immediate payment in full of all sums secured by the Security Instrument without further demand and may invoke the power of sale and any other [remedy] permitted by Applicable Law. . . .

Am. Compl., Ex. C (emphasis added). But as the Amended Complaint itself acknowledges, Wells Fargo sent Plaintiff a letter dated June 13, 2010, informing her that she was in default and giving her 30 days to cure it. Am. Compl. ¶ 23 (citing Ex. K). It further informed her that if she did not pay the $2,072.06 that was owed, Wells Fargo would proceed with acceleration and could proceed to foreclosure. It also noted, "[i]f foreclosure is initiated, you have the right to argue that you did keep your promises and agreements under the Mortgage Note and Mortgage, and to present any other defenses that you may have." Further, it told her of the right to reinstatement: "You have the right to reinstate your Mortgage Note and Mortgage or Deed of Trust after acceleration, and to have enforcement of the Mortgage discontinued and to have the Mortgage Note and Mortgage remain fully effective as if acceleration had never been required." Am. Compl., Ex. K.

While the letter informed Plaintiff that she could make certain arguments and raise defenses if the Lender initiated a foreclosure, that is different from informing her that she herself could initiate a court action to prevent acceleration or foreclosure before those processes even occurred. This is particularly so when the lender chooses to utilize nonjudicial foreclosure proceedings, as Wells Fargo did here. Am. Compl. ¶ 96. The Court recognizes that another case in this District has reached the opposite conclusion based on identical language in both the Deed of Trust and the notice letter, reasoning that the letter was the "functional equivalent" of what the Deed of Trust required *See Matanic v. Wells Fargo Bank, N.A.*, No. 3:12cv472, 2012 WL 4321634 (E.D. Va. Sept. 19, 2012). Nonetheless, the Court disagrees with the basis for that conclusion. The court in Matanic reasoned that such a breach could not be considered "material," which Virginia courts define as "a failure to do something that is so fundamental to the contract that the failure to perform the obligation defeats and essential purpose of the contract." Id. at *5 (quoting *Countryside Orthopaedics v. Peyton*, 541 S.E. 2d 279,285 (Va. 2001)). But Virginia law recognizes both "material" and "non-material" breaches as viable causes of actions entailing different remedies and defenses. *See RW Power Partners, L.P. v. Va. Elec. & Power Co.*, 899 F. Supp. 1490, 1496 (E.D. Va. 1995). Therefore, that a given breach would not be material does not mean that it would not be a breach of contract at all. The Court does not decide whether or not Plaintiff's alleged breach was material or non-material, but only concludes that she has sufficiently pled the elements of a breach of contract claim regarding the notice letter, as described in paragraph 57 of the Amended Complaint. *See Belote v. Bank of Am., N.A.*, 3:12CV526-JRS, 2012 WL 6608973 (E.D. Va. Dec. 18, 2012) ("Defendant's challenge to the materiality of

the breach in this case would best be addressed in a motion for summary judgment.").

*Mayo* at *10-12.[2]

27. The reasoning of *Mayo* is directly applicable to the deficiency in Exhibit C identified in paragraphs twenty-four and twenty-five above.

28. M&T Bank decided to deviate from the language required in the deed of trust in its form cure notices sent to borrowers in Virginia, including Moss. This was an intentional decision to provide less favorable language in cure notices sent to borrowers in Virginia.

29. In *Mathews v. PHH Mortg. Corp.*, 724 S.E. 2d 196 (Va. 2012), the Supreme Court of Virginia stated the following:

[T]he Matthewses argue that under *Bayview Loan Servicing, LLC v. Simmons*, 275 Va. 114, 654 S.E.2d 898 (2008), a lender must comply with all conditions precedent to foreclosure in a deed of trust even if the borrowers are in arrears. We agree.

In *Bayview,* the borrower was in arrears. Consequently, the lender accelerated repayment under the note and directed the trustee under the deed of trust to begin foreclosure proceedings. Thereafter, the parcel was sold at a foreclosure auction and the borrower filed a suit for damages alleging breach of the deed of trust. *Id.* at 117–18, 654 S.E.2d at 899. We determined that the sale was improper because Bayview had failed to provide a pre-acceleration notice, which was a condition precedent to acceleration under the deed of trust. By failing to provide the notice, Bayview breached the deed of trust by accelerating repayment and foreclosing:

Because Bayview did not comply with the specific condition precedent under the Deed of Trust, prior to the notice of foreclosure sale by [the trustee], *Bayview had not acquired the right to accelerate payment under the terms of the Deed of Trust.* Thus, [the trustee] could exercise no right of acceleration because no such right had then accrued to Bayview....

---

[2] In a later decision in *Mayo*, the Court, after conducting a bench trial, denied the borrower's request for rescission of the foreclosure sale based on the inadequate language in Wells Fargo's cure notice.

While Code § 55–59.1(A) does allow a proper notice of foreclosure sale to exercise an *accrued* right of acceleration, *Bayview failed to fulfill the contractual condition precedent that would have given it such a right.*

*Id.* at 121–22, 654 S.E.2d at 901 (emphasis added). Accordingly, we affirmed the circuit court's judgment in favor of the borrower. *Id.* at 122, 654 S.E.2d at 902.

A trustee's power to foreclose is conferred by the deed of trust. *Fairfax County Redevelopment & Hous. Auth. v. Riekse*, 281 Va. 441, 445–46, 707 S.E.2d 826, 829 (2011). That power does not accrue until its conditions precedent have been fulfilled. *See Bayview,* 275 Va. at 121, 654 S.E.2d at 901. The fact that a borrower is in arrears does not allow the trustee to circumvent the conditions precedent.

*Id.* at 199.

30. In *Parrish v. Fed. Nat'l Mortg. Ass'n* – Record Number 150454 (Va. June 16, 2016), the

Supreme Court of Virginia set forth a list of circumstances in which a court of equity

could set aside a trustee's deed:

[W]e have indicated that a trustee's deed could be set aside in "cases involving fraud, collusion with the purchaser, and a foreclosure sale price of such gross inadequacy that it shocks the conscience of the court." *Ramos v. Wells Fargo Bank, NA*, 289 Va. 321, 324 n.*, 770 S.E.2d 491, 494 n.* (2015) (per curiam) (internal alteration and quotation marks omitted). This list is not exhaustive. We have also said that a foreclosure sale could be set aside in equity when it was conducted in material breach of the deed of trust. *Smith v. Woodward*, 122 Va. 356, 374, 94 S.E. 916, 921 (1918) **("[A] court of equity will not permit a grantor in trust to be deprived of his property by an unauthorized act of the trustee, and will set aside a sale and conveyance where the trustee has exceeded the authority conferred upon him, or sold the grantor's land after the purposes of the trust have been accomplished, and especially where the purchaser has notice, actual or constructive, of the facts.")**; *see also Wasserman v. Metzger*, 105 Va. 744, 752-53, 54 S.E. 893, 895 (1906) (collecting cases).[5]

[5] A general allegation that the trustee breached the deed of trust is not sufficient. The homeowner's allegations must (1) identify with specificity the precise requirements in the deed of trust that he or she asserts constitute conditions precedent to foreclosure, (2) allege facts indicating that the trustee failed to substantially comply with them so that the power to foreclose did not accrue, and (3) allege that the foreclosure purchaser knew or should have

known of the defect. *See Squire v. Va. Hous. Dev. Auth.*, 287 Va. 507, 515-18, 758 S.E.2d 55, 60-61 (2014).

*Id.* at *7 and fn. 5 (emphasis supplied).

31.    In *Newport News Shipbuilding Employees' Credit Union v. Busch*, Record No. 150678

(Va. 2016) (unpublished order), the Court held that the borrower-defendant in a

post-foreclosure unlawful detainer case

"[a]lleged facts sufficient to place the validity of the trustee's deed in doubt." He alleged that the deed of trust required a pre-acceleration notice providing at least 30 days to cure any default as a condition precedent to acceleration of the debt and foreclosure. He alleged that the requirement was not substantially complied with.[1]

[1] Bayport [appellant] did not assign error to the circuit court's ruling that it had not substantially complied with the pre-acceleration notice requirement.

*Id.* at 3-4 and fn. 1 (internal citations omitted).

32.    Rather than provide Moss with adequate notice of the action required to cure the

default on the loan, Exhibit C provided confusing language:

> To cure this default, you must pay the total amount due at this time of $11,730.16 PLUS ANY ADDITIONAL PAYMENTS, FEES AND LATE CHARGES THAT BECOME DUE BETWEEN THE DATE OF THIS LETTER AND THE TIME YOUR PAYMENT IS RECEIVED. Such payment must be received in our office within 30 days from the date of this letter.

33.    Exhibit C fails to provide adequate notice of the action required to cure the default

because it states that additional payments may be required but fails to provide a

firm figure for curing the default after November 20, 2016, leaving Moss to guess as

to the correct figure.

34.    As set forth above, the Supreme Court of Virginia has taken an expansive view of

homeowner defenses to acceleration and foreclosure. As an example, the Supreme

Court of Virginia held in *Busch, supra* that an allegation that a borrower received a

notice of default with twenty-nine days' instead of thirty days' notice was sufficient to state a claim to set aside a completed foreclosure sale. *Busch* at 1-4.

35. For the reasons set forth above, Exhibit C did not comply with the cure notice requirements of the note and deed of trust.

36. On December 15, 2015, one of the contractors Moss contacted, Mike Gunderson ("Gunderson"), provided her with an estimate for completion of a portion of the repairs. Moss advised Gunderson that she wanted to hire him. Gunderson requested that he be paid $2,600.00 as an up-front payment, with an additional $2,600.00 to be paid upon completion of the work.

37. Moss began calling M&T Bank about the claim check. An M&T Bank representative advised Moss to call Bayview Loan. When Moss called Bayview Loan, representatives who spoke with Moss did not provide her with any assistance regarding the claim check.

38. Because she had not been able to obtain assistance with the claim check, Moss called a branch of M&T Bank in Richmond. The branch representative advised Moss to call an M&T Bank office in Ohio at 1-888-882-1858.

39. Moss called 1-888-882-1858 and reached an M&T Bank representative, who advised Moss to (1) send the check to M&T Bank in Ohio and (2) submit a package to M&T Bank to obtain approval of payment for the repairs, including (a) a copy of the contract with Gunderson and (b) a copy of the insurance claim. The representative advised Moss that M&T Bank would contact Gunderson by sending correspondence to his fax number to request his contractor's license, a completed W9 form, and a conditional waiver of lien form. Moss provided M&T Bank with Gunderson's fax

number. Gunderson has advised Moss that he never received any correspondence from M&T Bank, via fax or any other method.

40.  In January 2016, Moss endorsed the claim check and forwarded it to M&T Bank. M&T Bank received the endorsed claim check in January 2016. Moss also submitted to M&T Bank a copy of her contract with Gunderson and a copy of the insurance claim, which M&T Bank received on January 9, 2016.

41.  In a letter to Moss dated February 15, 2016, M&T Bank stated, in part, the following:

Please complete and sign this form and return in order to begin processing your claim.

*Certification of Intent to Repair

I (We) hereby certify that the loss draft/check will be used to repair the damage that occurred and that the repairs will be made in a workmanlike manner and that no material or labor liens will occur as a result of the labor performed or materials used.

*Current Account Statement

I (We), the undersigned mortgagor(s), acknowledge that in the event that our account is not current, M&T Bank may apply any remaining insurance loss proceeds resulting from our property loss to our mortgage account, including cost fees or any expenses associated with our account. Any remaining proceeds will be applied first to any delinquencies in the payment of principal and interest. Once the loan is brought current and all fees & expenses are paid, any remaining proceeds will be returned promptly to the mortgagor(s).

A copy of the first page of the letter excerpted above accompanies this amended complaint as "Exhibit D."

42.  For a period of time, Moss waited to hear from M&T Bank regarding approval for Gunderson to begin repairing the home. Over the next few months, Moss contacted M&T Bank on several occasions to follow up on the status of review of the proposed repairs for the home. M&T Bank representatives advised that they had not received

the requested documents from Gunderson. Moss advised those representatives that Gunderson had never received any correspondence from M&T Bank and requested that M&T Bank send its request for information to Gunderson. The M&T Bank representatives advised that they would send the requests to Gunderson but failed to do so.

43.	M&T Bank instructed Atlantic to foreclose on the home.

44.	In response to that instruction, Atlantic advertised the home for foreclosure on March 2, 2016.

45.	After Moss, by counsel, sent correspondence to Atlantic on February 24, 2016, Atlantic advised that the March 2, 2016 foreclosure sale had been canceled.

46.	M&T Bank, through Atlantic, mailed to Moss a letter which purported to comply with the requirements paragraph 6(C) of the note and paragraph 22 of the deed of trust as recited herein above. A copy of that letter accompanies this amended complaint as "Exhibit E." Exhibit E failed to comply with those requirements because it did not give Moss credit for the claim check funds which M&T Bank had not elected to apply to repair and restoration of the home. Because Exhibit E did not give Moss credit for the claim check funds, it grossly overstated the arrearage on the loan (if, in fact, Moss owed any arrearage on the loan after credit for the claim check funds).

47.	Exhibit E further overstated the arrearage on the loan because M&T Bank has charged Moss $7,800.00 in unexplained fees in 2015. The claimed charge for such fees is set forth on the mortgage statement accompanies this amended complaint as "Exhibit F."

48.     For the reasons set forth above, Exhibit E did not comply with the cure notice requirements of the note and deed of trust. For the reasons set forth below, Exhibit E has been mooted by the fact that Moss reinstated the loan by tendering the claim check funds towards payments on the loan.

49.     In an attempt to move forward with the repair of the home, Moss searched M&T Bank's website to locate a conditional waiver of lien form. Moss found that form and sent it on to Gunderson, who completed it and returned it to Moss. Moss then sent M&T Bank the conditional waiver of lien form, proof of Gunderson's contractor's license, and a W9 form for Gunderson. To date, M&T Bank has not responded to Moss' request for approval of repairs to the home.

50.     M&T Bank again instructed Atlantic to foreclose on the home.

51.     In response to that instruction, Atlantic advertised the home for foreclosure on June 15, 2016.

52.     In a letter to Moss dated May 16, 2016, M&T Bank stated the following:

> Our records indicate that it has been 90 days since we have received any updates related to the repairs to your property. We have tried to contact you numerous times by telephone and mail for a status of repairs to your property. M&T is making a final request for the status of these repairs. If we do not hear from you within 15 days of the date of this letter, the remaining loss funds of $ 15826.81 will be applied to your principal balance.
>
> Please understand that this money will no longer be available to pay for the cost of the repairs to your property.

A copy of that letter accompanies this amended complaint as "Exhibit G."

53.   On June 3, 2016, Moss, by counsel, sent a letter to M&T Bank by fax and Priority

Mail, copying counsel for ALG Trustee by e-mail. A copy of that letter accompanies

this amended complaint as "Exhibit H." M&T Bank received Exhibit H by fax on June

3, 2016. M&T Bank received Exhibit H by Priority Mail on June 6, 2016.

54.   Exhibit H constituted (1) a qualified written request ("QWR") pursuant to the

federal Real Estate Settlement Procedures Act ("RESPA") at 12 U.S.C. Section 2605

(e)(1)(B)(2)(2) and as implemented by 24 C.F.R. Section 3500.21(e) and (2) a Notice

of Grievance sent in accordance with paragraph 20 of the deed of trust.

55.   Exhibit H stated, in part, the following:

> You are holding $15,826.81 in funds paid to Ms. Moss by The Hartford pursuant to an insured loss on the home. You have been in possession of those funds for several months. In a letter to Ms. Moss dated May 16, 2016, you stated the following:
>
>> Our records indicate that it has been 90 days since we have received any updates related to the repairs to your property. We have tried to contact you numerous times by telephone and mail for a status of repairs to your property. M&T is making a final request for the status of these repairs. If we do not hear from you within 15 days of the date of this letter, the remaining loss funds of $15826.81 will be applied to your principal balance.
>
> This statement contains multiple inaccuracies. That said, Ms. Moss agrees to the request to apply the $15,826.81 to the loan, so long as those funds are applied in

accordance with paragraphs two and five of the deed of trust, which provide, in pertient, part, the following:

> **2.    Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

5.     **Property Insurance**.....

....Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened....If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any paid to Borrower. **Such insurance proceeds shall be applied in the order provided for in Section 2.**

Under paragraph five of the deed of trust you had the unilateral right to apply the funds to restoration and repair of the home, but you have had the funds for several months and have taken no action to obtain restoration or repair of the home. Therefore, you are obligated to apply the insurance proceeds in accordance with paragraph two of the deed of trust.

Accompanying this letter is a copy of a mortgage statement dated May 16, 2016, which you sent to Ms. Moss. That statement provides that the amount due for June 1, 2016 is $14,582.42. Based on that statement, the $15,826.81 should be sufficient to reinstatement. Please accept this letter at Ms. Moss' tender of reinstatement funds.

Ex. H.

56.     On June 6, 2016, one of the attorneys at Atlantic advised Moss' counsel that M&T

Bank had not provided any updates regarding the matters raised in Exhibit H.

57.     On June 9, 2016, Moss, by counsel, filed a complaint in the Circuit Court of the City of

Richmond, Virginia (the "first complaint") seeking, *inter alia*, a declaratory judgment

M&T Bank had no entitlement to foreclosure of the home on June 15, 2016. The first

complaint averred that Moss had tendered funds sufficient to reinstate the loan and

M&T Bank had never sent to Moss a proper cure notice as required by paragraph

6(C) of the note and paragraph 22 of the deed of trust.

58.     In response to the first complaint, M&T Bank and Atlantic canceled the foreclosure

sale scheduled for June 15, 2016.

59.     While Moss does not agree (as set forth more fully below) that the loan has ever

been accelerated in accordance with the terms of the note and deed of trust,

paragraph 19 of the deed of trust allows for reinstatement of the loan after

acceleration and prior to foreclosure, stating, in pertinent part, following:

**Borrower's Right to Reinstate After Acceleration.** If Borrower meets
certain conditions, Borrower shall have the right to have enforcement of this
Security Instrument discontinued at any time prior to the earliest of: (a) five
days before sale of the Property pursuant to any power of sale contained in
this Security Instrument; (b) such other period as Applicable Law might
specify for the termination of Borrower's right to reinstate; or (c) entry of a
judgment enforcing this Security Instrument. Those conditions are that
Borrower: (a) pays Lender all sums which then would be due under this
Security Instrument and the Note as if no acceleration had occurred; (b) cures
any default of any other covenants or agreements; (c) pays all expenses
incurred in enforcing this Security Instrument, including, but not limited to,
reasonable attorneys' fees, property inspection and valuation fees, and other
fees incurred for the purpose of protecting Lender's interest in the Property
and rights under this Security Instrument; and (d) takes such action as Lender
may reasonably require to assure that Lender's interest in the Property and
rights under this Security Instrument, and Borrower's obligation to pay the
sums secured by this Security Instrument, shall continue unchanged. Lender
may require that Borrower pay such reinstatement sums and expenses in one
or more of the following forms, as selected by Lender: (a) cash; (b) money
order; (c) certified check, bank check, treasurer's check or cashier's check,
provided any such check is drawn upon an institution whose deposits are
insured by a federal agency, instrumentality or entity; or (d) Electronic Funds
Transfer. Upon reinstatement by Borrower, this Security Instrument and
obligations secured hereby shall remain fully effective as if no acceleration had
occurred. However, this right to reinstate shall not apply in the case of
acceleration under Section 18.

60.     By tender of the claim check funds to the arrearage on the loan, as set forth in

Exhibit H, Moss reinstated the loan by paying all sums then due under the deed of

trust and the note.

61.     In a letter dated June 9, 2016, M&T Bank purported to respond to Exhibit H. A copy

        of the purported response accompanies this amended complaint as "Exhibit I."[3]

62.     Exhibit I stated, in part, as follows:

> In regards to request number 38 and 40, I have enclosed a copy of the letter dated May 16, 2016, informing you of the status of the insurance loss proceeds. As the letter states, the proceeds were applied towards your principal balance as no further communication was received by you within the time stated in the letter. Furthermore, while M&T may have received insurance proceeds, force placed insurance has stayed in place as no insurance information as requested previously by M&T has been received and the receipt of insurance proceeds does not serve as proof of adequate insurance coverage. M&T would still require a Renewal Bill, Reinstatement Notice, Binder or New Policy as stated in our February 29, 2012, and April 19, 2012, letters to have the force placed insurance removed.

63.     In November 2016, Moss disputed M&T Bank's credit reporting for the mortgage

        loan in letters to Equifax Information Services, LLC ("Equifax"); Experian Information

        Solutions, Inc. ("Experian"); and Trans Union, LLC ("Trans Union") (collectively, the

        "CRAs"). Moss copied M&T Bank on the dispute sent to the CRAs, and M&T Bank

        received a copy of the dispute. In particular, Moss disputed the reporting by M&T Bank

        that the loan was delinquent and in foreclosure because of the application of the claim

        check funds to the loan.

64.     Moss also sent a request to M&T Bank in November 2016 to rescind her mortgage loan

        under the federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*

65.     In a letter dated November 25, 2016, M&T Bank stated, in part, the following:

> In regards to the correspondence recently received from your office, it appears to be a duplicate of a correspondence responded to on June 9, 2016 by M&T. Please note the enclosed M&T letter dated June 9, 2016 stated that insurance proceeds were applied to the outstanding principal balance on your client's mortgage loan. However, this is not the case; the funds are still in restricted escrow and have not been applied. On behalf of M&T I would like to apologize for any confusion this may have caused.

---

[3] Because they are so voluminous, the enclosures included by M&T Bank are not attached as part of Exhibit I.

66.   As of November 25, 2016, M&T Bank had been in possession of the claim check funds for more than ten months.

67.   In February 2017, Moss again disputed M&T Bank's credit reporting for the mortgage loan in letters to the CRAs. Moss copied M&T Bank on her dispute, and M&T Bank received a copy of Moss' dispute. In particular, Moss disputed the reporting by M&T Bank that the loan was delinquent and in foreclosure because M&T Bank had wrongfully applied the claim check funds or failed to apply those funds.

68.   In a letter dated March 10, 2017, M&T Bank stated that "the insurance proceeds cannot be applied to the past due mortgage loan payments and must be used to make the necessary repairs," reversing its position entirely from Exhibits D, G, and I. A copy of the March 10, 2017 letter from M&T Bank accompanies this amended complaint as "Exhibit J."

69.   M&T Bank again instructed Atlantic to foreclose on the home.

70.   In response to that instruction, Atlantic advertised the home for foreclosure on April 5, 2017 at 1:00 p.m.

71.   At all times after Moss provided the claim check funds to M&T Bank, any payments for less than the entire amount claimed as owed by M&T Bank, with no credit for the claim check funds, would have been refused and rejected by M&T Bank.

### Count One – Breach of Paragraph 6(C) of the Note and Paragraph 22 of the Deed of Trust – Action for Declaratory Judgment

72.   Because Moss reinstated the loan by tendering the claim check funds, M&T Bank is prohibited by the note and deed of trust from accelerating the amount owed on the note and foreclosing on the deed of trust, until it sends a proper cure notice in compliance with paragraph 6(c) of the note and paragraph 22 of the deed of trust.

73.	Even if the loan had not been reinstated after M&T Bank caused Exhibit C and Exhibit E to be mailed to Moss, M&T Bank would be prohibited by the note and deed of trust from accelerating the amount owed on the note and foreclosing on the deed of trust because neither Exhibit C nor Exhibit E complied with the requirements of paragraph 6(c) of the note and paragraph 22 of the deed of trust.

74.	Neither M&T Bank nor any other creditor ever sent to Moss any proper 30-day cure notice as required by paragraph 6(C) of the note and paragraph 22 of the deed of trust.

75.	For the reasons set forth above in this Count of this amended complaint, M&T Bank is not entitled to accelerate the amount owed on the note or foreclose on the deed of trust (because no creditor has ever sent to Moss a proper cure notice as required by paragraph 6 (C) of the note and paragraph 22 of the deed of trust).

76.	Because M&T Bank is not entitled to foreclose on the home, Atlantic is not empowered to conduct a foreclosure auction of the home.

77.	*Bremer v. Bitner,* 44 Va. Cir. 505 (1996 Va. Cir.) held that a substitute trustee must cancel a foreclosure sale and seek the guidance of a court of competent jurisdiction if advised of a good faith defense against foreclosure and that a substitute trustee who does not cancel a foreclosure sale under such circumstances is personally liable.

78.	*Squire v. Va. Hous. Dev. Auth.*, 287 Va. 507, 758 S.E.2d 55 (2014) indicates that a substitute trustee may not go forward with a foreclosure where a foreclosure would be improper.

79. The facts set forth in this Count of this amended complaint constitute a good faith defense to foreclosure, obliging Atlantic to refrain from foreclosure action as to the home and consult the guidance of a court of competent jurisdiction.

80. M&T Bank incurred expenses in excess of $500 in connection with scheduling the home for foreclosure on March 2, 2016; June 15, 2016; and April 5, 2017 and has taken steps to add such costs to the obligation of the note and to the lien of the deed of trust, but is not entitled to do so.

81. After the filing of the complaint in this case, Atlantic canceled the foreclosure sale of the home scheduled for April 5, 2017 at 1:00 p.m.

82. Because of the facts set forth above in this Count of this amended complaint, Moss is entitled to entry of a declaratory judgment (a) that M&T Bank is not entitled to foreclose on the home until a proper cure notice has been sent to Moss as required by the note and deed of trust; (b) that Atlantic is not empowered to conduct a foreclosure sale of the home until a proper cure notice has been sent to Moss as required by the note and deed of trust; (c) that any foreclosure of the home absent compliance with the cure notice requirements of the note and deed of trust would be void, alternatively voidable; (d) that M&T Bank is not entitled to add to the obligation of the note or to the lien of the deed of trust any of its costs incurred in connection with scheduling the home for foreclosure on March 2, 2016; June 15, 2016; April 5, 2017; or any other date(s); and (e) that Moss is not responsible for any of such costs.

**Count Two – Breach of Paragraph 6(C) of the Note and Paragraph 22
of the Deed of Trust – Action for Compensatory Damages**

83. Moss re-avers and incorporates all other factual allegations set forth in this

amended complaint.

84.     In its actions set forth above, M&T Bank breached paragraph 6(C) of the note and paragraph 22 of the deed of trust.

85.     As a proximate result of the breaches of the note and deed of trust set forth in this count of this amended complaint, Moss has sustained and will sustain the following damages:

    A.      Loss of the quiet enjoyment of the home.

    B.      Substantial inconvenience.

    C.      Expenditure of funds to prevent wrongful foreclosure on the home.

    D.      Damage to her credit record, with consequent economic harm to her.

    E.      The prospect of wrongful foreclosure of the home.

    F.      Wrongful assessment of foreclosure fees and costs to the balance of the loan.

86.     Because of the facts set forth in this Count of this amended complaint, Moss is entitled to entry of an order awarding her judgment against M&T Bank for compensatory damages.

**Count Three – Breach of Paragraphs 2 and 5 of the
Deed of Trust – Action for Declaratory Judgment**

87.     Moss re-avers and incorporates all other factual allegations set forth in this amended complaint.

88.     Paragraph 5 of the deed of trust provides, in part, the following:

> In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

89. Paragraph 2 of the deed of trust states, in part, the following:

> 2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

90. M&T Bank and Moss agreed in writing to application of the insurance proceeds to the loan. Exs. D, G, H, and I. Because of that agreement, M&T Bank had an obligation to apply the proceeds of the claim check funds to the loan as provided by paragraph 2 of the deed of trust.

91. On information and belief, M&T Bank applied the claim check funds to the loan, but, at a later date, reversed the application of such funds to the loan and claimed that the funds had been held in "restricted escrow."

92. Additionally, by stating on multiple occasions that it would apply the claim check funds to the loan, M&T Bank implicitly acknowledged that restoration or repair of the home was "not economically feasible" and/or use of the claim check funds for restoration or repair would lessen M&T Bank's security interest.

93. Prior to obtaining the claim check, in October 2015, Moss hired a handyman, who repaired damage to the roof but did not install a new roof as suggested by another contractor.

94.     The repairs completed by the handyman have been sufficient to preserve the integrity of the home and further repairs have not been economically feasible for more than a year, rather the claim check funds should have been applied to bring the loan current.

95.     Additionally, M&T Bank's security interest would have been lessened by applying the claim check funds to repairs instead of applying those funds to the loan as provided by paragraph 2 of the deed of trust because of the outstanding arrearage on the loan.

96.     Paragraph 5 of the deed of trust mandates application of the claim check funds to the loan if "the restoration or repair is not economically feasible or [M&T Bank's] security would be lessened." Ex. A at ¶ 5.

97.     In Virginia, it is "settled principle that contract terms under the control of the parties must be performed within a reasonable time where the contract does not specify the time of performance." *Ryland Group, Inc. v. Wills*, 229 Va. 459, 467, 331 S.E.2d 399, 405 (1985).

98.     M&T Bank has had the claim check funds for approximately fifteen months and has failed to apply them to the loan; alternatively, M&T Bank applied them to the loan and then reversed the application and returned the funds to "restricted escrow."

99.     M&T Bank's wrongful retention of the claim check funds breached paragraphs 2 and 5 of the deed of trust.

100.    Additionally, M&T Bank waived the right to insist on restoration or repair of the home by stating in writing on three occasions that the claim check funds would be or had been applied to the loan.

101. In 2016, upon instructing Atlantic to foreclose on the home, M&T Bank had an obligation to apply the claim check funds to the loan because M&T Bank, by proceeding to foreclosure, made a determination that the claim check funds would not be provided to Moss for repair and/or restoration of the home.

102. Because of the facts set forth above in this Count of this amended complaint, Moss is entitled to entry of a declaratory judgment (a) that M&T Bank has been obligated, since instructing Atlantic to foreclose on the home, to apply the claim check funds to the loan as required by paragraphs 2 and 5 of the deed of trust; (b) that the loan balance has been reduced by application of the claim check funds to the loan; (c) that the amounts outstanding on the loan should be recalculated to reflect application of the claim check funds as of the date M&T Bank first instructed Atlantic to foreclose on the home, if not earlier; (d) setting forth the current amount outstanding on the loan and amount necessary to bring the loan current, if any; and (e) that M&T Bank is not entitled to any fees or costs arising out of its failure to comply with paragraphs 2 and 5 of the deed of trust.

### Count Four – Breach of Paragraphs 2 and 5 of the Deed of Trust – Action for Declaratory Judgment

103. Moss re-avers and incorporates all other factual allegations set forth in this amended complaint.

104. In its actions set forth above, M&T Bank breached paragraphs 2 and 5 of the deed of trust.

105. As a proximate result of the breaches deed of trust set forth in this count of this amended complaint, Moss has sustained and will sustain the following damages:

A. The damages recited in this amended complaint in Count Two above.

B.     Increased interest charges, costs, and fees assessed to the loan.

106.   Because of the facts set forth in this Count of this amended complaint, Moss is

entitled to entry of an order awarding her judgment against M&T Bank for

compensatory damages.

**Count Five – Breach of the Implied Covenant of Good Faith
and Fair Dealing – Action for Compensatory Damages**

107.   Moss re-avers and incorporates all other factual allegations set forth in this

amended complaint.

108.   The note and deed of trust contained an implied covenant obligating the holder of

the note, and and/or any entity acting as creditor, to treat Moss with good faith and

fair dealing. Any holder of the note, as to the deed of trust, assumed, upon accepting

endorsement or assignment of the note, the duty of good faith and fair dealing

included in the note and deed of trust (as is so of every contract) that neither party

shall do anything which will have the effect of destroying or injuring the other party

to receive the benefit of that party's rights and benefits under the contract.

109.   The rights under the deed of trust, under Virginia law, accrued to the holder of the

note.

110.   Under the terms of the note and deed of trust, M&T Bank had discretion regarding

the application of the claim check funds to the loan and other actions taken with

respect to Moss.

111.   The actions by M&T Bank averred in this amended complaint constituted breaches

of the implied covenant of good faith and fair dealing.

112. As a proximate result of the breaches implied covenant of good faith and fair dealing set forth in this count of this amended complaint, Moss has sustained and will sustain the following damages:

    A.      The damages recited in this amended complaint in Count Two above.

    B.      Increased interest charges, costs, and fees assessed to the loan.

113. Because of the facts set forth in this Count of this amended complaint, Moss is entitled to entry of an order awarding her judgment against M&T Bank for compensatory damages.

**Count Six – Violation of the Federal Real Estate Settlement Procedures Act – Action for Actual and Statutory Damages, Attorney's Fees and Costs**

114. Moss re-avers and incorporates all other factual allegations set forth in this amended complaint.

115. On or about April 21, 2016, Moss mailed a QWR to M&T Bank. A copy of that QWR accompanies this amended complaint as "Exhibit K."

116. 12 U.S.C. § 2605(e) provides as follows:

Duty of loan servicer to respond to borrower inquiries.

(1) Notice of receipt of inquiry.

    (A) In general. If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

    (B) Qualified written request. For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--

(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

(2) Action with respect to inquiry. Not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall--

(A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

(B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

(3) Protection of credit rating. During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower

and relating to such period or qualified written request, to any consumer reporting agency (as such term is defined under section 603 of the Fair Reporting Act [15 USCS § 1681a]).

(4) Limited extension of response time. The 30-day period described in paragraph (2) may be extended for not more than 15 days if, before the end of such 30-day period, the servicer notifies the borrower of the extension and the reasons for the delay in responding.

*Id.*

117. Exhibit I purported to comply with the requirements of 12 U.S.C. § 2605(e)(2) in responding to Exhibits H and K but did not so comply because:

   A.   M&T Bank made no corrections to the loan account in response to Exhibits H and K.

   B.   It failed to provide any explanation or correction for the $7,800.00 in fees paid year-to-date by Moss, which were disputed in Exhibits H and K.

   C.   It merely stated that the claim check funds had been applied to the principal of the loan without addressing the dispute regarding application of those funds in Exhibit H.

   D.   It establishes that M&T Bank conducted no investigation regarding the disputed fees of $7,800.00 or the application of the claim check funds because:

       i.   There is no mention or explanation regarding the disputed fees, rather one of the enclosures provided by M&T Bank was a payment history with vague entries such as:

```
03-01-16  00-00  766  MISC. REPAYMENT
   1,540.00       0.00       0.00       0.00
03-01-16  00-00  766  MISC. REPAYMENT
     100.00       0.00       0.00       0.00
03-01-16  00-00  631  PROPERTY PRESERVATION
      14.00       0.00       0.00       0.00
     720.00       0.00       0.00       0.00
03-01-16  00-00  601  MISC. CORPORATE DISBURSEMENT
   5,440.00       0.00       0.00       0.00
03-01-16  00-00  601  MISC. CORPORATE DISBURSEMENT
   1,540.00       0.00       0.00       0.00
03-01-16  00-00  601  MISC. CORPORATE DISBURSEMENT
     100.00       0.00       0.00       0.00
```

The excerpt above shows $9,454.00 in charges to the loan with essentially no detail for Moss to use to assess the validity of such charges.

    ii. M&T Bank stated that the claim check funds were applied to the principal balance, in breach of the terms of the deed of trust, but later stated in November 2016 that those funds had never been applied to the loan.

118. Bayview Loan purported to respond to Exhibit K but it's response made no mention of the dispute regarding the $7,800.00 in fees assessed to the loan and establishes that Bayview Loan conducted no investigation into the disputed fees. A copy of Bayview Loan's purported response, excluding enclosures, accompanies this amended complaint as "Exhibit L."

119. M&T Bank violated 12 U.S.C. § 2605(e)(3) by providing information related to purportedly overdue payments to the CRAs during the 60-day periods following its receipt of Exhibit H and Exhibit K. Moss' credit files reflect this prohibited reporting.

120. M&T Bank's violations of RESPA averred above are part of a pattern and practice of noncompliance with the requirements of 12 U.S.C. § 2605(e) with respect to the loan at issue in this case and the servicing of mortgage loans in general.

121. Despite the facts set forth above, Moss has been subjected to negative credit reports regarding the loan, the note, and the deed of trust, which has reduced her credit scores, causing her economic harm.

122. As a proximate result of the violations of RESPA by M&T Bank, Moss has sustained and will sustain the following actual damages:

    A.     The damages recited in this amended complaint in Count Two above.

    B.     Increased interest charges, costs, and fees assessed to the loan.

    C.     Tremendous emotional distress, including but not limited to anxiety, fear, worry, lack of sleep, embarrassment, shame, and humiliation and resultant physical symptoms.

123. Because of the facts set forth in this Count of this amended complaint, Moss is entitled to entry of an order awarding her judgment against M&T Bank for actual and statutory damages pursuant to 12 U.S.C. § 2605(f)(1)(A)-(B) and for costs and attorney's fees pursuant to 12 U.S.C. § 2605(f)(3).

**Count Seven – Violations of the Federal Fair Credit Reporting Act
(15 U.S.C. § 1681s-2(b)(1)(A)) – Suit Against M&T Bank for Statutory,
Compensatory, and Punitive Damages and for Attorney's Fees and Costs**

124. Moss re-avers and incorporates all other factual allegations set forth in this amended complaint.

125. In November 2016, the CRAs responded to Moss' disputes from that month by forwarding Investigation Results to Moss. The Investigation Results uniformly verified the delinquency and foreclosure reporting by M&T Bank.

126. In March 2017, the CRAs responded to Moss' disputes from February 2017 by forwarding Investigation Results to Moss. The Investigation Results uniformly verified the delinquency and foreclosure reporting by M&T Bank.

127. The reportings by the CRAs were false, alternatively, substantively misleading because they failed to account for the claim check funds or the ongoing dispute between Moss and M&T Bank.

128. The CRAs received but ignored Moss' disputes and refused to delete the inaccurate information regarding the mortgage account from Moss' credit files.

129. On multiple occasions, the CRAs furnished Moss' consumer reports to multiple entities which contained the inaccurate information regarding the M&T Bank loan.

130. On one or more occasions (including within the past two years), by example only and without limitation, M&T Bank violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Moss' disputes.

131. When Moss submitted her disputes to the CRAs, they used a dispute system named, "e-Oscar," which has been adopted by the CRAs and by their furnisher-customers such as M&T Bank. It is an automated system, and the procedures used by the CRAs are systemic and uniform.

132. When the CRAs receive a consumer dispute, they (usually via an outsourced vendor) translate that dispute into an "ACDV" form.

133. Upon information and belief, the ACDV form is the method by which M&T Bank has elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a).

134. On information and belief, Moss avers that, to date, M&T Bank has not complained to the CRAs about the amount of information it receives regarding a consumer

dispute through the e-Oscar system or through ACDVs.

135.  When M&T Bank receives a consumer dispute ACDV form, it is aware that it may also contact the CRA responsible for transmitting the ACDV to obtain more information regarding a consumer's dispute.

136.  On information and belief, based on the manner in which the CRAs responded to Moss' disputes – that they provided Reinvestigation Results that inaccurately indicated that the mortgage account was severely delinquent and in foreclosure status – Moss avers that the CRAs did in fact forward Moss' disputes via ACDVs to M&T Bank

137.  M&T Bank understood the nature of Moss' disputes when it received ACDVs from the CRAs.

138.  When M&T Bank received ACDVs from the CRAs, it could have reviewed its own systems and verified that (1) the claim check funds were or should have been applied to the loan as reinstatement, (2) M&T Bank would have wrongfully refused any monthly payments from Moss after she tendered the claim check funds to be applied to the loan, and (3) a genuine and material dispute existed regarding the status of the loan.

139.  Notwithstanding the above, M&T Bank conducted a cursory review of its internal computer system for credit reporting and regurgitated back to the ACDV system the inaccurate balance, arrearage, and loan status reporting

140.  When M&T Bank received ACDVs from the CRAs, it did not conduct substantive reviews to determine whether or not the information in its credit reporting computer system was accurate.

141. As a proximate result of M&T Bank's violations of 15 U.S.C. § 1681s-2(b)(1)(A), Moss suffered actual damages, including but not limited to: loss of credit, lost opportunities to enter into consumer credit transactions, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

142. The violations by M&T Bank were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, M&T Bank was negligent, which entitles Moss to recovery under 15 U.S.C. § 1681o.

143. The law in the U.S. District for the Eastern District of Virginia, the U.S. Court of Appeals for the Fourth Circuit, and even nationally has long been set to require a detailed and searching investigation by a creditor when it receives a consumer's FCRA dispute through a CRA.

144. M&T Bank was aware of the *Johnson v. MBNA* decision by the Fourth Circuit when it followed its ACDV procedures used regarding Moss' dispute.

145. On information and belief, Moss alleges that the procedures followed regarding her FCRA disputes through e-Oscar were the procedures that M&T Bank intended its employees and/or agents to follow.

146. On information and belief, Moss alleges that M&T Bank's employees and/or agents did not make a mistake (in the way in which they followed applicable procedures) when they received, processed, and responded to the CRAs' ACDVs.

147. On information and belief, Moss alleges that M&T Bank has not materially changed its FCRA investigation procedures despite learning of its failures in this matter and other similar matters.

148.    Because of the facts set forth in this Count of this amended complaint, Moss is entitled to entry of an order awarding her judgment against M&T Bank for actual damages, statutory damages, punitive damages, costs, and attorney's fees from M&T Bank pursuant to 15 U.S.C. § 1681n and § 1681o.

**Count Eight – Violations of the Federal Fair Credit Reporting Act
(15 U.S.C. § 1681s-2(b)(1)(B)) – Suit Against M&T Bank for Statutory,
Compensatory, and Punitive Damages and for Attorney's Fees and Costs**

149.    Moss re-avers and incorporates all other factual allegations set forth in this amended complaint.

150.    On one or more occasions (including within the past two years), by example only and without limitation, M&T Bank violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the CRAs.

151.    As Moss detailed in Count Seven, M&T Bank has elected to use the e-Oscar system for its FCRA disputes received through the CRAs.

152.    M&T Bank is aware of the meaning of the several dispute codes used by the CRAs in e-Oscar.

153.    M&T Bank does not contend that the ACDV system is an inadequate means to receive FCRA disputes through the CRAs.

154.    M&T Bank understood Moss' disputes regarding the inaccuracy of the balance, loan status, and arrearage reporting on her credit report.

155.    Nevertheless, M&T Bank ignored such information and instead simply regurgitated the same information it had previously reported to the CRAs.

156.    The violations by M&T Bank were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the

alternative, M&T Bank was negligent, which entitles Moss to recovery under 15 U.S.C. § 1681o.

157.    As a proximate result of M&T Bank's violations of 15 U.S.C. § 1681s-2(b)(1)(B), Moss suffered actual damages, including but not limited to: loss of credit, lost opportunities to enter into consumer credit transactions, damage to reputation, embarassment, humiliation, and other mental and emotional distress.

158.    Because of the facts set forth in this Count of this amended complaint, Moss is entitled to entry of an order awarding her judgment against M&T Bank for actual damages, statutory damages, punitive damages costs, and attorney's fees from M&T Bank pursuant to 15 U.S.C. § 1681n and § 1681o.

**Count Nine – Violations of the Federal Fair Credit Reporting Act
(15 U.S.C. § 1681s-2(b)(1)(C), (D) and (E)) – Suit Against M&T Bank for
Statutory, Compensatory, and Punitive Damages and for Attorney's Fees and Costs**

159.    Moss re-avers and incorporates all other factual allegations set forth in this amended complaint.

160.    On one or more occasions (including within the past two years), by example only and without limitation, M&T Bank violated 15 U.S.C. § 1681s-2(b)(1)(C)-(E) by publishing its representations within Moss' credit files with the CRAs without also including a notation that these debts were disputed and by failing to correctly report results of an accurate investigation to each credit reporting agency and to permanently and lawfully correct its own internal records to prevent the re-reporting of the inaccurate reporting.

161.    M&T Bank:

        A.      Failed to add the "XB" code to the CCC (Compliance Condition Code) field in

the ACDV dispute forms when it responded to the CRAs.

B.      Failed to permanently and lawfully correct its own internal records to prevent re-reporting of the inaccurate balance and delinquency information for the mortgage account.

C.      Failing to modify, delete, or permanently block its reporting for the mortgage account based on a determination that such reporting was inaccurate, incomplete, or unverifiable.

162.    M&T Bank knew that Moss disputed the balance, loan status, and arrearage reporting for the mortgage account through her disputes to the CRAs and through copies of those disputes mailed directly to M&T Bank.

163.    Moss' disputes were *bona fide* by their very nature.

164.    As a proximate result of M&T Bank's violations of 15 U.S.C. § 1681s-2(b)(1)(C) and (D), Moss suffered actual damages, including but not limited to: loss of credit, lost opportunities to enter into consumer credit transactions, damage to reputation, embarassment, humiliation, and other mental and emotional distress.

165.    The violations by M&T Bank were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

166.    M&T Bank was aware of the *Saunders v. B B & T* FCRA decision by Fourth Circuit when it followed its ACDV procedures used regarding Moss' disputes.

167.    On information and belief, Moss alleges that the procedures followed regarding Moss' FCRA disputes through e-Oscar were the procedures that M&T Bank intended its employees and/or agents to follow.

168.    On information and belief, Moss alleges that M&T Bank's employees and/or agents

did not make a mistake (in the way in which they followed applicable procedures)

when they received, processed, and responded to the CRAs ACDVs and did not

include the XB code in the CCC field.

169. On information and belief, Moss alleges that M&T Bank has not materially changed

its FCRA investigation procedures despite learning of its failures in this case.

170. In the alternative, M&T Bank was negligent, which entitles Moss to recovery under

15 U.S.C. § 1681o.

171. Because of the facts set forth in this Count of this amended complaint, Moss is

entitled to entry of an order awarding her judgment against M&T Bank for actual

damages, statutory damages, punitive damages, costs, and attorney's fees from M&T

Bank pursuant to 15 U.S.C. § 1681n and § 1681o.

### Count Ten – Breach of Fiduciary Duty – Suit
### Against Atlantic for Compensatory Damages

172. Moss re-avers and incorporates all other factual allegations set forth in this

amended complaint.

173. Prior to the merger of Atlantic Law into Orlans, ALG Trustee was wholly owned by

Atlantic Law Group and did business solely for Atlantic Law Group, which doubled

as legal counsel for ALG Trustee. ALG Trustee, in reality, was the *alter ego* of Atlantic

Law Group and is now the *alter ego* of Orlans.[4]

---

[4] This portion of the complaint draws heavily on the allegations set forth in a class action complaint filed against McCabe Weisberg & Conway, LLC (another law firm operating in Virginia which focuses on foreclosures of consumer loans) in the case styled *Mica M. Morgan and Gerald Vaiden, Jr. v. McCabe Weisberg & Conway, LLC* – Civil Action No. 3:14-cv-695 (E.D. Va.).

174. ALG Trustee and Atlantic Law Group operated as part of a single business operation. ALG Trustee and Orlans now operate as part of a single business operation.

175. Atlantic Law Group created ALG Trustee so that it and its attorneys could, in effect, serve as substitute trustees under deeds of trust in order to remain under the control of Atlantic Law Group. Orlans continues to operate ALG Trustee in the manner it was previously operated by Atlantic Law Group.

176. This business model was developed so that Atlantic Law Group (and now Orlans) could conduct foreclosures in Virginia as quickly and cheaply as possible while creating the appearance that the foreclosure was conducted by a neutral trustee, and not by a law firm, who also had an attorney-client relationship with the lender conducting the foreclosure.

177. Atlantic Law Group, acting through its principals and attorneys, provided management and decision-making for ALG Trustee and operated as the point of contact for consumer facing foreclosure action by Atlantic Law Group. Meanwhile, upon information and belief, ALG Trustee has no employees and acts only on paper as the "substitute trustee" under deeds of trust, including the deed of trust at issue in this case.

178. ALG Trustee has never operated independently of Atlantic Law Group, nor does it operate independently of Orlans now. It does not have separate management or a separate business or income. It does not have separate assets. It does not have separate employees. Instead, ALG Trustee and Atlantic Law Group have been interrelated and inseparably operate as a single business operation; currently, ALG

Trustee and Orlans are interrelated and inseparably operate as a single business operation.

179. Additionally, Linda M. Orlans, Esquire, previously the owner or part-owner of Atlantic Law Group and currently the owner or part-owner of Orlans, serves as Chief Executive Officer of ALG Trustee. On information and belief, all the other officers of ALG Trustee were employees and/or principals of Atlantic Law Group; currently, all the other officers of ALG Trustee are employees and/or principals of Orlans.

180. At all times relevant to this case, ALG Trustee had little or no income that was not directly derived from Atlantic Law Group, and upon, information and belief, had no employees other than those who worked at Atlantic Law Group. This situation remains unchanged after the merger with Orlans, except Orlans controls ALG Trustee. ALG Trustee was created as a shell entity whose sole purpose is to act as the "substitute trustee" for the mortgage loans that were referred to Atlantic Law Group (and now Orlans) for the purpose of collecting delinquent debts and/or conducting foreclosure sales.

181. Upon information and belief, ALG Trustee has not acted as a "substitute trustee" for any deeds of trust except for those referred to Atlantic Law Group (and now Orlans) for debt collection and foreclosure proceedings. In fact, upon information and belief, ALG Trustee did not, as a matter of practice, agree to serve as substitute trustee for any deeds of trust except those where Atlantic Law Group has been retained for debt collection and foreclosure proceedings. Currently, ALG Trustee will not agree to serve as substitute trustee for any deeds of trust except those where Orlans has been retained for debt collection and foreclosure proceedings.

182. Upon information and belief, ALG Trustee does not have a separate or independent contractual relationship or income stream from M&T Bank (or other noteholders or loan servicers). Instead, it was allocated an amount of money by Atlantic Law Group from the money the servicer or noteholder contractually paid Atlantic Law Group (now Orlans).

183. Prior to the merger between Atlantic Law Group and Orlans, in all regards in which ALG Trustee was technically involved in a foreclosure process, it was operating as the controlled agent and *alter ego* of Atlantic Law Group. After the merger with Orlans, in all regards in which ALG Trustee is technically involved in a foreclosure process, it is operating as the controlled agent and *alter ego* of Orlans.

184. Atlantic Law Group, on the other hand, served as the frontline company name that was used by ALG Trustee to deal directly with borrowers. Atlantic Law Group directed the actions of the personnel who interacted with the consumers, loan servicers, and lenders whose mortgage loans were referred to Atlantic Law Group for debt collection or foreclosure proceedings. Orlans has now taken on the role of Atlantic Law Group.

185. Borrowers, loan servicers, and lenders never directly interacted with ALG Trustee but instead were directed to contact Atlantic Law Group and are now directed to contact Orlans.

186. The personnel and resources used to accomplish and transact foreclosures in the name of ALG Trustee were nearly all those maintained in the name of Atlantic Law Group (now Orlans).

187.	Because of the averments set forth above, there are grounds for this Court to hold ALG Trustee and Orlans (as successor-in-interest to Atlantic Law Group) jointly liable for the wrongdoing averred in this Count of this amended complaint.

188.	Atlantic is a fiduciary to M&T Bank (or any other lender on the Deed of Trust) and Moss. *See Squire v. Va. Hous. Dev. Auth*., 287 Va. 507, 758 S.E.2d 55 (2014); *Smith v. Credico Indus. Loan Co*., 234 Va. 514, 362 S.E. 2d 735 (1987); *Powell v. Adams*, 179 Va. 170, 174, 18 S.E. 2d 261 (1942). ALG owes a duty of impartiality to M&T Bank (or any other lender on the Deed of Trust) and Moss: "[a] trustee under a deed of trust is a fiduciary for both debtor and creditor and must act impartially between them." *Smith*, 234 Va. at 516, 362 S.E.2d at 736 (citing *Whitlow v. Mountain Trust Bank*, 215 Va. 149, 152, 207 S.E.2d 837, 840 (1974).

189.	Atlantic has been obligated not to seek to foreclose on the home until M&T Bank establishes compliance with pre-conditions to foreclosure, including the cure notice requirements of the note and deed of trust. *See Squire, supra* (involving a different pre-condition – the pre-condition of an FHA face-to-face regulatory requirement).

190.	In *Squire, supra.*, the Supreme Court of Virginia allowed a damage claim against the substitute trustee to go forward even though the borrower had made no legal challenge prior to the foreclosure contesting whether the lender had complied with the contractual precondition to foreclosure of compliance with the FHA face-to-face regulatory mandate.

191.	*Squire* held to the effect that, in a case such as this, any substitute trustee was required to make a reasonable inquiry as to whether M&T Bank had complied with the preconditions for foreclosure of Moss' mortgage, and Atlantic has been on notice

since June of last year of M&T Bank's failure to comply with the cure notice requirements of the note and deed of trust.

192. Any such due diligence would have notified any substitute trustee of good faith defenses against foreclosure because of the facts set forth above in this amended complaint. However, because Atlantic had actual notice of the defenses against foreclosure, no due diligence was required to obtain notice of the defects in the foreclosure process.

193. Atlantic has had actual notice of the defenses against foreclosure for more than a year because of the communications and litigation related to Moss' loan. Atlantic's knowledge of the defenses against foreclosure establish that no due diligence was required for Atlantic

194. Atlantic willfully disregarded its fiduciary duty to Moss in order to obtain legal fees from M&T Bank for collection action as to the loan. Atlantic acted as both counsel to M&T Bank and "fiduciary" as to foreclosure action on the home.

195. Atlantic has breached its fiduciary duty to Moss by scheduling multiple foreclosures of the home and advertising those foreclosures with actual knowledge of M&T Bank's failure to comply with the preconditions for foreclosure required by the note and deed of trust.

196. As a proximate result of Atlantic's breaches of fiduciary duty, Moss has sustained and will sustain the damages recited in Count Two of this amended complaint.

197. Because of the facts set forth in this Count of this amended complaint, Moss is entitled to entry of an order awarding her judgment against Orlans and ALG Trustee, jointly and severally, for compensatory damages.

**Count Eleven - Violations of the Federal Fair Debt Collection
Practices Act – 15 USC § 1692 *et seq.* – Suit Against Atlantic for
Statutory Damages, Actual Damages, Costs, and Attorney's Fees**

198.   Moss re-avers and incorporates all other factual allegations set forth in this
       amended complaint.

199.   This count sets forth a claim against Atlantic for violations of the federal Fair Debt
       Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA")

200.   Atlantic Law Group was a law firm whose practice is focused on the collection of
       debts. ALG Trustee was the *alter ego* of Atlantic Law Group and is now the *alter ego*
       of Orlans. Orlans is a law firm whose practice is focused on the collection of debts.

201.   Atlantic regularly collected home loan debts.

202.   At all times relevant to this case, the loan has constituted a "debt," as that term is
       defined in 15 U.S.C. § 1692a(5).

203.   Atlantic regularly uses instrumentalit[ies] of interstate commerce [and] the mails"
       in its business. 15 U.S.C. § 1692a(6). Atlantic routinely makes telephone calls to
       Virginia citizens and used the U.S. mail to contact Virginia citizens.

204.   At all times relevant to this case, Atlantic has acted as a "debt collector," as that term
       is defined in 15 U.S.C. § 1692a(6).

205.   15 U.S.C. § 1692(e) provides, in part, as follows: "[a] debt collector may not use any
       false, deceptive, or misleading representation or means in connection with the
       collection of any debt." *Id.*

206.   Atlantic violated 15 U.S.C. § 1692(e) by, *inter alia*, falsely representing that the loan
       had been accelerated and was subject to foreclosure and threatening to foreclose on

the property when foreclosure was currently prohibited by the terms of the note and deed of trust.

207. For example, in a letter dated March 17, 2017, Atlantic stated, in part, the following:

Ms. Constance Moss
....

RE:    Our File No.        567846
        Property Address:    1013 Willow Lawn Drive
                            Richmond, VA 23226

We are hereby notifying you that a foreclosure sale of the Property will take place on the date, time, place, and terms as per the enclosed advertisement, and the Property will be sold then and there to the highest bidder....

208. 15 U.S.C. § 1692(f) provides, in part, as follows: "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." *Id.*

209. Atlantic violated 15 U.S.C. § 1692(f)(6) by, *inter alia*, "taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if (A) there is no present right to possession of the property claimed as collateral through an enforceable security instrument." *Id.*

210. 15 U.S.C. § 1692(f) provides, in part, as follows: "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." *Id.*

211. Atlantic violated 15 U.S.C. § 1692(f) by, *inter alia*, scheduling a foreclosure sale of the home, causing Moss extreme fear and distress, when it had no right to do so.

212. In its actions set forth in this amended complaint, Atlantic violated numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. § 1692(e) and 15 U.S.C. § 1692(f).

213. As a proximate result of Atlantic's violations of the FDCPA, Moss has sustained and will sustain the following actual damages:

    A.      The damages recited in this amended complaint in Count Two above.

    B.      Tremendous emotional distress, including but not limited to anxiety, fear, worry, lack of sleep, embarrassment, shame, and humiliation and resultant physical symptoms.

214. Because of the facts set forth in this Count of this amended complaint, Moss is entitled to entry of a judgment in her favor against Orlans and ALG Trustee, jointly and severally, for actual and statutory damages pursuant to 15 U.S.C. §§ 1692k(a)(1) and (2)(A) and costs and attorney's fee pursuant to 15 U.S.C. §§ 1692k(a)(3).

## VI. Applicable to Counts One and Three

215. Moss' rights are in doubt and in peril.

## VII. Demand for Trial by Jury

216. Moss demands trial by jury in this case.

## VIII. Conclusion

WHEREFORE, Moss prays that the Court:

    A.      Enter a declaratory judgment (a) that M&T Bank is not entitled to foreclose on the home until a proper cure notice has been sent to Moss as required by the note and deed of trust; (b) that Atlantic is not empowered to conduct a foreclosure sale of the home until a proper cure notice has been sent to Moss as required by the note and deed of trust; (c) that any foreclosure of the home absent compliance with the cure notice requirements of the note and deed of trust would be void, alternatively voidable; (d) that M&T Bank is not

entitled to add to the obligation of the note or to the lien of the deed of trust any of its costs incurred in connection with scheduling the home for foreclosure on March 2, 2016; June 15, 2016; April 5, 2017; or any other date(s); and (e) that Moss is not responsible for any of such costs.

B.    Enter a declaratory judgment (a) that M&T Bank has been obligated, since instructing Atlantic to foreclose on the home, to apply the claim check funds to the loan as required by paragraphs 2 and 5 of the deed of trust; (b) that the loan balance has been reduced by application of the claim check funds to the loan; (c) that the amounts outstanding on the loan should be recalculated to reflect application of the claim check funds as of the date M&T Bank first instructed Atlantic to foreclose on the home, if not earlier; (d) setting forth the current amount outstanding on the loan and amount necessary to bring the loan current, if any; and (e) that M&T Bank is not entitled to any fees or costs arising out of its failure to comply with paragraphs 2 and 5 of the deed of trust.

C.    Enter a judgment in her favor against M&T Bank for compensatory and actual damages.

D.    Enter a judgment in her favor against M&T Bank for punitive damages.

E.    Enter a judgment in her favor against Orlans and ALG Trustee, jointly and severally, for compensatory and actual damages.

F.    Enter an order requiring M&T Bank to pay Moss' reasonable attorney's fees and costs for preparing, filing, and maintaining Counts Six, Seven, Eight, and Nine of this amended complaint.

G.    Enter an order requiring Orlans and ALG Trustee to pay Moss' reasonable

attorney's fees and costs for preparing, filing, and maintaining Count Eleven

of this amended complaint.

H.    Enter an order awarding Moss pre-judgment and post-judgment interest at

the legal rate.

Respectfully submitted,

**CONSTANCE MOSS**

By_____/s/ Drew D. Sarrett_____
                Counsel

Drew D. Sarrett (VSB No. 81658)
The Sarrett Law Firm, PLLC
513 Forest Avenue, Suite 205
Richmond, Virginia 23229
Phone: (804) 303-1951
Fax: (804) 250-6005
E-mail: drew@sarrettlawfirm.com
*Counsel for Constance Moss*

**CERTIFICATE OF SERVICE**

I, Drew D. Sarrett, counsel for Constance Moss, certify that on May 5, 2017, I will

electronically file the foregoing with the Clerk of Court using the CM/ECF system, which

will send Notice of Electronic Filing to all counsel of record in this case.

_____/s/ Drew D. Sarrett_____
                Drew D. Sarrett